## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| G.I. SPORTZ INC.<br>GI SPORTZ DIRECT LLC;<br><br>*Plaintiffs*,<br>v.<br><br>VALKEN INC.,<br><br>*Defendant*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. _____

JURY TRIAL DEMANDED

**COMPLAINT**

## COMPLAINT

Plaintiffs G.I. Sportz Inc. and GI Sportz Direct LLC (collectively "GI") by and through their undersigned counsel, file this Complaint against Defendant Valken Inc. ("Valken"), and allege as follows:

## NATURE OF THE ACTION

1.     This is an action for [i] breach of contract, [ii] infringement of GI's trade dress rights in its federally-registered Marballizer trade dress in violation of 15 U.S.C. §1114, [iii] federal unfair competition in violation of 15 U.S.C. §1125(a), [iv] common law trademark infringement, and [v] violation of New Jersey's Fair Trade Act, N.J.S.A. 56:4-1.

## THE PARTIES

2.     G.I. Sportz Inc. is a Canadian corporation with a principal place of business at 6000 Kieran, Ville St Laurent, Quebec H4S 2B5, CANADA.

3.     GI Sportz Direct LLC is a Delaware limited liability company with a principal place of business at 570 Mantua Boulevard, Sewell, New Jersey 08080.  GI Sportz Direct LLC is a wholly-owned subsidiary of G.I. Sportz, Inc, and is the survivor of, and the predecessor-in-interest of all rights in and to, both KEE Action Sports, LLC and KEE Action Sports II, LLC

(collectively, "KEE Action"), each of which previously resided at and operated out of GI Sportz Direct LLC's current New Jersey address.

4.      Upon information and belief, Valken is a New Jersey corporation with its principal place of business at 1 Hawk Court, Swedesboro, New Jersey 08085.

## JURISDICTION AND VENUE

5.      This is an action for trade dress infringement that arises under the Lanham Act, Title 15, United States Code § 1051, et seq.  Accordingly, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338, and jurisdiction over the related ancillary claims under §1367.

6.      This Court has personal jurisdiction over Valken, and venue in this Court is proper pursuant to 28 U.S.C. §§ 1391(b), (c) and § 1400(b), in that, upon information and belief, Valken resides in this district, Valken has committed acts of infringement in this district that give rise to the claims alleged herein, and Valken has a regular and established practice of business in this district.

7.      This Court also has express jurisdiction pursuant to Section 10.01 of the Litigation Settlement Agreement entered into between Valken and KEE Action on May 20, 2014 ("the Agreement")—an agreement that Valken has breached, as detailed herein.  A copy of the Agreement is attached hereto as **Exhibit A.**

## GI'S MARBALLIZER TRADE DRESS

8.      GI is the world's leading provider of equipment and supplies to the paintball industry.  In 2015, GI acquired KEE Action, including all of KEE Action's assets, liabilities, rights and privileges.

9.      In 1994, R.P. Sherer Technologies, Inc. ("RPS") began selling a line of paintballs that introduced a second color into the machine used to manufacture the balls.  When done in a

certain manner, each resulting paintball had a random, blended design that swirled the colors together, resembling a marble. RPS branded these paintballs "Marballizer," and obtained U.S. Reg. No. 2,435,370 covering that name. Soon, the name "Marballizer," and the randomly swirled, multi-color design used on the paintball exterior, became synonymous with the high quality, consistent paintballs.

10. In 2003, RPS sold its paintball division, along with all rights in the Marballizer name and its associated trade dress, to Pursuit Marketing, Inc. ("PMI"), which was one of the nation's largest paintball manufacturer's at the time. KEE Action was later formed out of a merger between PMI and another paintball manufacturer, resulting in all rights in the Marballizer trade dress passing to KEE Action.

11. Thus, since 1994, and through the acquisitions and mergers described above, Marballizer brand paintballs, together with their unique, randomly blended, multi-color trade dress, have been continuously offered under the control of a single source. Over the years, paintballs having a random, swirled "marble" appearance have become associated with the Marballizer brand just as much as the brand has become associated with the unique paintball design. It is this distinctive design that constitutes the "Marballizer Trade Dress."

12. In order to protect its valuable trade dress, Plaintiff, G.I. Sportz Direct LLC, owns and maintains a federal trademark registration, U.S. Reg. No. 3,049,101 ("the Registration"), which covers the Marballizer Trade Dress. The Registration describes the Marballizer Trade Dress as consisting of "contrasting colors blended randomly together to form the appearance of a fanciful design on the surface of a paintball." A true and correct copy of the Registration is attached as **Exhibit B**.

3

13.    The Marballizer Trade Dress covered by the Registration has been in continuous use by GI and its predecessors-in-interest for over twenty years and, in addition to being inherently distinctive, has achieved significant secondary meaning among dealers and consumers of paintballs.  As a result of its longevity on the Principal Registry, the Registration is now incontestable under 15 U.S.C. § 1065.

### THE 2012 LAWSUIT

14.    In 2012, KEE Action became aware that Valken was infringing the Marballizer Trade Dress, at least with its "Redemption" brand paintballs.  KEE Action put Valken on actual notice of its infringement via letter on January 30, 2012.  A copy of the letter is attached as **Exhibit C**.

15.    Valken initially refused to cease infringement.  After subsequent investigation was conducted, KEE Action filed the 2012 Lawsuit asserting that Valken's Redemption and Graffiti brand paintballs infringed the Marballizer Trade Dress.  KEE Action also alleged infringement of several patents covering certain paintball markers and loaders.  A copy of the Complaint filed in the 2012 Lawsuit is attached as **Exhibit D**.

16.    Valken eventually filed a Motion to Dismiss the trade dress infringement claim on the basis that, in asserting the Registration, KEE Action had allegedly not sufficiently identified its asserted trade dress.  On December 17, 2013, this Court denied Valken's Motion on the basis that KEE Action's trade dress was associated with a specific product (i.e., Marballizer brand paintballs) rather than a series or line of products, thereby distinguishing the law upon which Valken had relied to support its motion.  A copy of the Court's Order denying Valken's Motion to Dismiss is attached as **Exhibit E**.

4

17.     Shortly thereafter, Valken entered into the Agreement with KEE Action, resulting in settlement of the 2012 Lawsuit.  The Agreement defines the Marballizer Trade Dress as "trade dress consisting of paintballs having contrasting colors blended randomly together to form the appearance of a fanciful design on the surface of the paintball."

18.     Pursuant to Section 3.01 (iii) of the Agreement, Valken agreed:

> *that on and after* [May 20, 2014] *it will not within the United States, and other territories where KEE has rights in the Marballizer Trade Dress, manufacture, cause to be manufactured, sell, market or distribute alone or in conjunction with others, the Subject Paintballs.*

19.     The Agreement defines "Subject Paintballs" as those having "the appearance of, or similar to, the KEE paintball, as exemplified by Exhibit C."   The referenced exhibit is attached as part of the Agreement, and is re-produced in relevant part below.



20.     Section 15 of the Agreement covers termination in the event of breach.  Pursuant to Section 15, and in the event of termination as a result of breach, Valken expressly waived any defenses "based solely on the passage of time, including but not limited to, any applicable statute of limitations and the defense of laches."  In such instances, the Section also expressly

states that KEE Action (now GI) "shall not be barred from claiming the trade dress damages it would have sought in [the 2012 Lawsuit]."

## VALKEN'S INFRINGING ACTS

21.     Upon information and belief, Valken initially complied with the Agreement, and stopped the sale of infringing paintballs having the Marballizer Trade Dress.  However, GI recently learned that Valken has reinitiated sales of Redemption and Graffiti brand paintballs that incorporate and copy GI's Marballizer Trade Dress.  This was recently confirmed through a third party paintball manufacturer that identified Valken as having recently manufactured paintballs with a multi-color swirl design like that identified in GI's Registration.

22.     On August 23, 2016, GI sent Valken a Notice of Breach, pursuant to Section 15 of the Agreement.  A copy of the Notice is attached as **Exhibit F**.

23.     After waiting the thirty (30) days required by the Agreement to see if Valken would request mediation, GI performed a test buy to confirm that Valken was still infringing. An order for Valken Redemption paintballs was placed through eBay.com, and shipment was received from "Valken Sports, 5017 North 30th Street, Colorado Springs, CO  80919."  The package was received on October 1, 2016.  Images evidencing the purchase and its contents are attached hereto as **Exhibit G**.  The images shown below are from the paintballs received as part of the test buy.  Each paintball exhibits the randomly blended mixture of two contrasting colors that characterizes the Marballizer Trade Dress.



24.     On October 12, 2016, GI sent a Notice of Termination to Valken, as required by Section 15 of the Agreement.   A copy of the Notice of Termination is attached hereto as **Exhibit H**.

**COUNT I**
**<u>Common Law Breach of Contract</u>**

25.     GI re-alleges and incorporates herein paragraphs 1 through 24 of this Complaint.

26.     GI's predecessor-in-interest agreed to dismiss the 2012 Lawsuit against Valken based on Valken's representation that it would abide by the terms of the Agreement.

27.     GI's predecessor-in-interest and Valken, through their authorized representatives, and in association with the official capacities of those representatives, entered into a valid contract governing the exchange of terms of settlement for the 2012 Lawsuit.

28.     Pursuant to Section 3.01 (iii) of the Agreement, Valken agreed:

> *that on and after* [May 20, 2014] *it will not within the United States, and other territories where KEE has rights in the Marballizer Trade Dress, manufacture, cause to be manufactured, sell, market or distribute alone or in conjunction with others, the Subject Paintballs.*

29.     GI did not provide any subsequent permission for Valken to sell any paintballs bearing the Marballizer Trade Dress. Thus, Valken breached the Agreement when it re-initiated the sale of at least Redemption-brand paintballs bearing the Marballizer Trade Dress.

30.     The Agreement expressly identifies "remedies for breach" of the Agreement upon termination for breach, and GI has followed all of the terms of the Agreement required to terminate the Agreement.   Accordingly, remedies for breach of the Agreement are expressly available to GI.

31.     Valken's breach of the Agreement was willful, and in direct contravention of the purpose of the contract.

32.     Valken's breach has harmed GI through lost sales and through erosion of the value of GI's goodwill in its Marballizer Trade Dress.

**COUNT II**
**Federal Trademark Infringement and Counterfeiting under**
**15 U.S.C. §§ 1114(1)(a) and 1117(a), (b), and (c)**

33.     GI re-alleges and incorporates herein paragraphs 1 through 32 of this Complaint.

34.     GI is the owner of all right, title and interest in and to the Registration.

35.     Valken's paintball products, including at least certain of its Graffiti and Redemption brand paintballs, copy and infringe GI's registered trade dress in violation of 15 U.S.C. §1114(1)(a).

36.     Valken had at least constructive knowledge pursuant to 15 U.S.C. §1072 of GI's rights in the Marballizer Trade Dress prior to the 2012 Lawsuit during Valken's unauthorized use of that trade dress in association with the offer of directly competing paintballs.

37.     Valken also had actual knowledge of GI's rights in its Marballizer Trade Dress at least as early as January 30, 2012, yet it continued to use the trade dress on its paintball products.

38.     Valken, thus, has deliberately and willfully used GI's federally registered Marballizer Trade Dress in association with products directly within the designation of GI's federal Registration in an attempt to trade upon and/or diminish the widespread goodwill, reputation and selling power established by GI and its predecessors-in-interest, and to pass Valken's paintball products off as those of GI.

39.     Valken has advertised, promoted, sold, offered and distributed paintballs dressed in what Valken knows to be a counterfeit representation of GI's federally registered Marballizer Trade Dress.

40.     GI has not consented to Valken's use of GI's trade dress covered by the Registration.

41.     Valken's unauthorized use of GI's Marballizer Trade Dress for use with the sale of paintballs that directly compete with those sold by GI is likely to cause confusion, mistake or deception as to the affiliation, connection or association of Valken with GI in violation of 15 U.S.C. §1114.

42.     The intentional and willful nature of the aforementioned acts renders this violation subject to damages recoverable by GI in the nature of statutory damages, Valken's profits, GI's actual damages, and recovery of costs, pursuant to 15 U.S.C. §1117(a).

43.     The fact that Valken has used and is using a counterfeit trade dress entitles GI to treble damages, statutory damages, and attorney's fees pursuant to 15 U.S.C. §1117(b) and (c).

44.     As a result of Valken's aforementioned conduct, GI has suffered and continues to suffer loss of goodwill and other irreparable harm for which GI has no adequate remedy at law. Accordingly, only an injunction from this Court can prevent GI's further irreparable harm at the hands of Valken.

## COUNT III
## Federal Unfair Competition (15 U.S.C. §1125(a))

45.     GI re-alleges and incorporates herein paragraphs 1 through 44 of this Complaint.

46.     GI is the owner of valid common law rights in its Marballizer Trade Dress, which it has used, together with its predecessors-in-interest, continuously in connection with the sale of paintballs since the Marballizer Trade Dress was first developed in 1994.

47.     GI's Marballizer Trade Dress is distinctive by virtue of both inherent distinctiveness and acquired distinctiveness resulting from GI's efforts in promoting and using the trade dress, together with its predecessors-in-interest, since 1994, including use through the sale hundreds of millions of Marballizer brand paintballs throughout the United States over that time, each exhibiting the Marballizer Trade Dress.

48.     By using GI's Marballizer Trade Dress, Valken has deliberately and willfully attempted to borrow off of the long-standing and hard-earned goodwill, reputation and selling power established by GI in connection with GI's Marballizer brand paintball products throughout the United States.

49.     Valken's actions in this regard evidence an attempt to confuse consumers as to the origin and/or sponsorship of Valken's products.

50.     Valken's unauthorized and tortuous conduct has deprived, and will continue to deprive, GI of the ability to control the consumer perception of GI's goods marketed under its

Marballizer Trade Dress, placing the valuable reputation and goodwill of GI in the hands of Valken, over whom GI have no control.

51.     Valken's conduct is likely to cause confusion, mistake or deception as to the affiliation, connection or association of Valken's products with GI's products, and as to the origin, sponsorship or approval of Valken and its goods, in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1).

52.     Valken's acts have been intentional, with full actual knowledge of and complete disregard for GI's federally registered and incontestable trade dress registration.

53.     The intentional and willful nature of the aforementioned acts renders this violation subject to damages recoverable by GI in the nature of statutory damages, Valken's profits, GI's actual damages, recovery of costs, and enhanced damages as an exceptional case, pursuant to 15 U.S.C. §1117.

54.     As a result of Valken's aforementioned conduct, GI has suffered and continues to suffer loss of goodwill and other irreparable harm for which GI has no adequate remedy at law. Accordingly, only an injunction from this Court can prevent GI's further irreparable harm at the hands of Valken.

## COUNT IV
## Common Law Trademark Infringement

55.     GI re-alleges and incorporates herein paragraphs 1 through 54 of this Complaint.

56.     GI is the owner of valid common law rights in its Marballizer Trade Dress, which it has used, together with its predecessors-in-interest, continuously with the sale of paintballs since the Trade Dress was first developed in 1994.

57.     GI's Marballizer Trade Dress is distinctive by virtue of both inherent distinctiveness and acquired distinctiveness resulting from GI's efforts in promoting and using

the trade dress, together with its predecessors-in-interest, since 1994, selling hundreds of millions of paintballs using the trade dress across the country over that time.

58.     Valken's actions complained of herein are likely to cause, confusion, mistake or deception among consumers as to an affiliation, connection or association between Valken's paintballs and GI and its Marballizer Trade Dress, and as to the origin, sponsorship or approval of Valken's paintballs, in violation of New Jersey common law.

59.     Valken's unauthorized conduct also has deprived and will continue to deprive GI of the ability to control the consumer perception of GI's paintballs provided in connection with its Marballizer Trade Dress, placing the valuable reputation and goodwill of GI in the hands of Valken over whom GI has no control.

60.     Because Valken had actual and constructive notice of GI's prior use of and rights in its Marballizer Trade Dress before Valken began using its infringing paintball design designation, Valken's unlawful trademark infringement is willful.

61.     As a result of Valken's conduct, GI is likely to suffer harm, and has already been injured.

## COUNT V
### Unfair Competition Under N.J.S.A. §§ 56:4-1 *et. seq.*

62.     GI re-alleges and incorporates herein paragraphs 1 through 61 of this Complaint.

63.     Valken's actions complained of herein constitute acts of unfair competition through Valken's appropriation for their own use of the reputation and goodwill associated with GI's Marballizer Trade Dress in violation of N.J.S.A. §§ 56:4-1 *et seq.*

64.     Valken committed this infringement willfully, knowingly, maliciously and in conscious disregard of GI's rights in its Marballizer Trade Dress.

65.     As a result of Valken's aforementioned conduct, GI has suffered and continues to suffer loss of goodwill and other irreparable harm for which GI has no adequate remedy at law. Accordingly, only an injunction from this Court can prevent GI's further irreparable harm at the hands of Valken.

## JURY DEMAND

GI requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, as to all Counts of this Complaint, GI request that this Court enter a judgment in favor of GI and against Valken on each Count herein, and grant relief as follows:

A.     Declaring that Valken has breached the Agreement entered into by GI's predecessors-in-interest and Valken, and awarding GI monetary damages that have resulted from that breach;

B.     Permanently enjoining and restraining Valken, its parents, subsidiaries, holding companies, licensees, owners, directors, officers, partners, assigns, related entities, affiliates, predecessors, successors, employees, representatives, trustees, receivers, agents and any other persons or entities acting on behalf of Valken or with Valken's authority, from:

a.     selling, offering for sale, distributing, advertising or promoting within the United States any goods under or in connection with the Marballizer Trade Dress, or product designs confusingly similar therewith; and

b.     doing any act or thing that is likely to induce the belief that Valken's goods, services or activities are in some way connected with GI's business, or that is likely to injure or damage GI's rights in its Marballizer Trade Dress or the associated goodwill;

C.      Requiring that Valken be ordered to recall from the channels of United States trade all products, packaging, advertising and promotional material sold or distributed by Valken or its affiliates that uses or reflects the Marballizer Trade Dress pursuant to 15 U.S.C. §1116(d);

D.      Requiring Valken to reimburse GI for all damages GI has suffered by reason of Valken's acts of infringement and unfair competition, to account for and pay to GI all profits derived by reason of such acts, and, based on the willfulness of Valken's actions and its use of a counterfeit of GI's registered trade dress, to remit to GI treble damages, profits, or statutory damages (including as provided by 15 U.S.C. §1117);

E.      Finding that this case constitutes an exceptional case pursuant to 15 U.S.C. §1117, and awarding GI its reasonable attorneys' fees and disbursements incurred in bringing this action;

F.      Requiring that Valken reimburses GI for all disbursements and costs incurred in bringing this action;

G.      Requiring that Valken deliver and destroy all advertisements, brochures, promotional prints, and sales sheets in its possession or control within the United States that use the Marballizer Trade Dress, pursuant to 15 U.S.C. §1118, and immediately cease use of and delete any Internet advertisements featuring said trade dress; and

H.      Awarding GI such other and further relief as this Court may deem equitable.

Dated:  October 13, 2016                    Respectfully Submitted,


                                            JOHN M. HANAMIRIAN, ESQUIRE
                                            HANAMIRIAN LAW FIRM, P.C.
                                            NJ Attorney I.D.: 002861992
                                            40 E. Main Street
                                            Moorestown, New Jersey 08057
                                            (856) 793-9092
                                            (856) 793-9121 – f
                                            jmh@hanamirian.com