UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

G.I. SPORTZ, INC. and
GI SPORTZ DIRECT, LLC,                1:16-cv-07170-NLH-KMW

                Plaintiffs,           **OPINION**

        v.

VALKEN, INC.,

                Defendant.

**APPEARANCES**:

JOHN M. HANAMIRIAN
HANAMIRIAN LAW FIRM PC
40 EAST MAIN STREET
MORRESTOWN, NJ 08057
        On behalf of Plaintiffs

ANTHONY J. DIMARINO, III
EMMETT STEPHAN COLLAZO
A.J. DIMARINO, III, PC
41 GROVE STREET
HADDONFIELD, NJ 08033
        On behalf of Defendant

**HILLMAN**, District Judge

        This matter concerns claims for trade dress violations

regarding the patterns on paintballs.  Presently before the

Court is the motion of Defendant to enforce a settlement that

Defendant contends it entered into with Plaintiff.[1]  For the

---

[1] Defendant has requested that portions of its briefs and
supporting materials be redacted because it has a strong
interest in protecting its pricing information and settlement
negotiations.  The Court finds that the limited portions of
Defendant's submissions it seeks to redact meet the requirements
of Local Civil Rule 5.3(c)(3).

reasons expressed below, Defendant's motion will be denied.

**BACKGROUND**

Plaintiffs, G.I. Sportz, Inc. and GI Sportz Direct, LLC (hereinafter "GI"), claim that GI is the world's leading provider of equipment and supplies to the paintball industry. GI owns a federal trademark registration, U.S. Reg. No. 3,049,101, which covers the trade dress of paintballs with "contrasting colors blended randomly together to form the appearance of a fanciful design on the surface of a paintball," called the "Marballizer" trade dress.  The Marballizer trade dress has been in existence for over twenty years, and according to GI, in addition to being inherently distinctive, it has achieved a significant secondary meaning among dealers and consumers of paintballs, including an indication of high quality paintballs.

In the instant action, GI claims that Defendant, Valken, Inc., has infringed on GI's trade dress by manufacturing, marketing, and selling paintballs with the Marballizer design. Previously, in September 2012 GI, formerly Kee Action Sports, sued Valken for the same conduct, but the parties settled their dispute in March 2014.  See Kee Action Sports LLC v. Valken Inc., Civil Action 1:12-cv-06069-NLH-KMW.  GI claims that Valken has resumed its infringement, and has breached their settlement agreement.

2

GI filed this action on October 13, 2016.  On November 4, 4, 2016, Valken filed its answer, affirmative defenses, and counterclaims.  On November 23, 2016, GI simultaneously filed a motion for preliminary injunction and a motion to strike Valken's affirmative defenses.  The Court heard GI's preliminary injunction motion on December 21, 2016, and granted GI's motion, ordering that Valken was enjoined throughout the United States from "making, having made, importing, advertising, distributing, offering and selling paintballs with a shell having the appearance of a marble, specifically, a surface design having contrasting colors blended randomly together."  (See Docket No. 44, 49, 57.)

Thereafter, the case proceeded through discovery and on March 21, 2017, the matter was referred to mediation, which was ultimately unsuccessful.  The Court denied GI's motion to strike Valken's affirmative defenses on June 15, 2017.  (Docket No. 72, 73.)

Valken has filed the instant motion to enforce a settlement it contends the parties agreed to on August 2, 2017.  Valken relates that Eugenio Postorivo, Valken's President and CEO, and Joe Colonese, Valken's Vice-President, traveled to Florida to meet with GI's CEO, Richmond Italia, at a restaurant to discuss

3

the pending litigation between Valken and GI,[2] which includes two other cases related to this action.[3]  Valken contends that during the first two hours of their meeting, Postorivo and Italia reached an agreement to resolve all the pending litigation. Valken further contends that aside from discussing the fine points of the agreement at various times during the two-day visit, the agreement between Postorivo and Italia never waivered as to the terms of Valken's purchase of paint from GI, Valken's payment of outstanding invoices, and future dispute resolution procedures.  Valken argues that Postorivo and Italia's oral agreement, which was reduced to writing and emailed by Valken's counsel to GI a few days later, is an enforceable contract. Valken contends that GI's after-the-fact attempt to disclaim the settlement is improper, and the Court should enforce the terms of the parties' agreement.

GI rejects Valken's representation that an agreement was reached in Florida.  GI contends that Italia never represented he had authority to settle all the pending litigation, and he could not have made such a representation because any agreement to settle must be approved by GI's board of directors.  GI

---

[2] Italia states that he was unaware that Postorivo traveled to Florida with Colonese until he walked into the restaurant and saw Postorivo sitting at the bar with Colonese.

[3] See GI Sportz, Inc. v. Valken, Inc., Civil Action 1:17-cv-05040 and 1:17-cv-05590.

4

further contends that most of the purported terms of the
settlement proffered by Valken were never discussed, and the
terms are so contrary to GI's interests and in conflict with the
history of the parties, it is clearly evident that GI did not
agree to them.  In short, GI argues that the majority of the
parties' interactions were social with no discussion of the
pending litigation, and that Valken "conjured from thin air" the
purported settlement.

## DISCUSSION

### A.  Subject matter jurisdiction

GI's trade dress infringement claims arise under the Lanham
Act, 15 U.S.C. § 1051 et seq., and GI's breach of contract,
common law infringement, and unfair competition claims arise
under New Jersey law.  This Court has jurisdiction over GI's
federal claims under 28 U.S.C. § 1331, and supplemental
jurisdiction over GI's state law claims under 28 U.S.C. § 1367.

### B.  Standard for Motion to Enforce a Settlement

The law governing the enforcement of a settlement agreement
holds that a settlement agreement between parties to a lawsuit
is a contract like any other contract.  Peskin v. Peskin, 638
A.2d 849, 857 (N.J. Super. Ct. App. Div. 1994) (citing Nolan v.
Lee Ho, 577 A.2d 143, 146 (N.J. 1990)).  A contract is formed
where there is offer and acceptance and terms sufficiently
definite that the performance to be rendered by each party can

5

be ascertained with reasonable certainty.  U.S. v. Lightman, 988 F. Supp. 448, 458 (D.N.J. 1997) (citing Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435, 608 A.2d 280 (1992)).  That contract is enforceable if the parties agree on essential terms and manifest an intention to be bound by those terms.  Id.  Where the parties do not agree on one or more essential terms, however, courts generally hold that the agreement is unenforceable.  Id.

The party seeking to enforce the alleged settlement agreement has the burden of proving the existence of the agreement under contract law.  Id. (citations omitted).  Courts treat a motion to enforce settlement under the same standard as a motion for summary judgment because the central issue is whether there is any disputed issue of material fact as to the validity of the settlement agreement.  Washington v. Klem, 388 F. App'x 84, 85 (3d Cir. 2010) (citing Tiernan v. Devoe, 923 F.2d 1024, 1031 (3d Cir. 1991)).

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir.

7

2001).

### C.  **Analysis**

GI has challenged the purported settlement agreement proffered by Valken on several bases, but the Court need only consider one:  Whether Italia had the authority to enter into a binding settlement agreement on behalf of GI.

Valken contends that Italia had the authority to enter into a settlement agreement because of his position as CEO of GI, and because Italia represented to Postorivo that his position as principal and decision-maker at GI conferred that authority. Italia, however, refutes that he made such representations, and relates that any agreement to settle litigation involving GI must be approved by GI's board of directors in order to be a valid and binding contract.  Thus, before assessing the content of the purported settlement agreement, the Court must determine whether Italia had the authority to enter into a settlement agreement in the first place.

Agency principles govern the analysis.  Actual authority, either express or implied, may "'be created by written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account.'"  Jennings v. Reed, 885 A.2d 482, 490 (N.J. Super. Ct. App. Div. 2005) (quoting Restatement (Second) of Agency § 26 (1958)).  On the

8

other hand, "'apparent authority . . . is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him.'"  Id. § 27.

Specifically with regard to settlement agreements, the issue of authority to settle most often arises in situations where a party argues that an attorney did not have authority to settle the matter on behalf of his client.  That context is instructive here.

"The general rule is that unless an attorney is specifically authorized by the client to settle a case, the consent of the client is necessary."  Amatuzzo v. Kozmiuk, 703 A.2d 9, 12 (N.J. Super. App. Div. 1997) (citations omitted). Negotiations of an attorney are not binding on the client unless (1) the client has expressly authorized the settlement, or (2) "the client's voluntary act has placed the attorney in a situation wherein a person of ordinary prudence would be justified in presuming that the attorney had authority to enter into a settlement, not just negotiations, on behalf of the client."  Id. (citations omitted).  The attorney's words or acts alone are insufficient, however, to cloak the attorney with apparent authority.  Id. (citations omitted).

Thus, Valken, as the party with the burden of proving an

9

enforceable settlement exists, must establish that Italia, as the agent for GI, had actual or apparent authority to bind GI to a settlement.  Valken has failed to do so.

Valken contends that Italia had authority to settle because he is CEO of GI.  Valken also contends that Italia told Postorivo he had such authority.  In response, GI refutes both representations by Valken in a sworn declaration by Italia, as well as by William Ceranski, Vice-President of Worldwide Sales for GI who was present during several of the parties' gatherings in Florida.  GI's position that Italia did not have authority to independently enter into a binding settlement agreement because it must be approved by GI's board was also communicated by GI's counsel to Valken's counsel in three written communications on August 23, 29, and 30, 2017.

Valken's self-serving view of Italia's settlement authority does not meet its burden of demonstrating the absence of a genuine issue of material fact on that issue.  Valken has also failed to provide any evidence that GI conferred settlement authority on Italia, or that GI's actions would have lead Valken to believe that Italia had such authority.  To the contrary, GI has provided specific facts to prove otherwise.  Moreover, even if Italia had conveyed to Postorivo his ability to enter into a settlement agreement, that unilateral representation would be insufficient to actually bind GI to that settlement.  See In re

10

Gliottone, 2013 WL 275956, at *6 (N.J. Super. Ct. App. Div. 2013) (quoting Mercer v. Weyerhaeuser Co., 735 A.2d 576, 592 (N.J. Super. Ct. App. Div. 1999) ("It is well-established that 'the appearance of authority . . . cannot be established alone and solely by proof of [conduct by] the supposed agent."); Hunterdon County Dist. Soc. for Prevention of Cruelty to Animals, Inc. v. New Jersey State Soc. for Prevention of Cruelty to Animals, 2009 WL 1507057, at *1-2 (N.J. Super. Ct. App. Div. 2009) (noting that even though there was a factual discrepancy between the testimony of plaintiff's counsel and the defendant, the burden of establishing apparent authority rests with the party seeking to establish such authority, and finding that the plaintiff did not meet its burden of proving that defense counsel had settlement authority because although the settlement was placed on the record and defense counsel did not state on the record that board approval was necessary for the settlement, board approval was necessary to be binding); Coleman Enterprises Co. v. Scottsdale Insurance Company, 2017 WL 1224545, at *4 (D.N.J. 2017) (denying motion to enforce a settlement because disputed material facts existed as to whether the plaintiff's contractor could bind plaintiff to any settlement); cf. Thorner v. Sony Computer Entertainment America LLC, 2013 WL 1145200, at *8 (D.N.J. 2013) ("Thorner's attorneys had apparent authority to bind him to the Settlement Agreement, because Thorner knowingly

11

placed his attorneys in such a situation that Sony, Sony's
counsel, and the Magistrate Judge were justified in believing
that Thorner's attorneys had authority to bind Thorner to the
Settlement Agreement.").

Thus, regardless of the terms of a purported settlement, a
court cannot enforce an agreement where there is no evidence
that one party had actual or apparent authority to enter into
that agreement.  Consequently, the Court must deny Valken's
motion to enforce the settlement agreement because it has not
met its burden to prove that a binding settlement agreement
exists.

An appropriate Order will be entered.


Date:  __June 22, 2018__              __s/ Noel L. Hillman__
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.

12